**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HOSHIYAR SINGH,
                        *Petitioner,*

            v.

ERIC H. HOLDER JR., Attorney
General,
                        *Respondent.*

No. 07-70500

Agency No.
A076-868-718

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
May 10, 2011—San Francisco, California

Filed July 21, 2011

Before: Betty B. Fletcher and Sidney R. Thomas,
Circuit Judges, and Nancy Gertner,
District Court Judge.*

Opinion by Judge B. Fletcher

*The Honorable Nancy Gertner, District Court Judge for the United States District Court for Massachusetts, sitting by designation.

## COUNSEL

Robert B. Jobe, Law Office of Robert B. Jobe, San Francisco, California, for the petitioner.

Jessica Segall (argued), U.S. Department of Justice, Office of Immigration Litigation, Washington, D.C., for the respondent.

## OPINION

B. FLETCHER, Circuit Judge:

Hoshiyar Singh appeals from the BIA's January 2007 denial of his motion to reopen premised on ineffective assistance of counsel. Singh married a U.S. citizen during the pendency of his appeal from the IJ's denial of his affirmative asylum application. He is the beneficiary of an approved immediate relative visa, and seeks to reopen so that he may apply for adjustment of status.

The BIA concluded that Singh's prior counsel did not render ineffective assistance, because counsel made a "tactical" decision to forgo seeking a stay of voluntary departure in favor of filing a "motion to remand" with the Ninth Circuit. Moreover, the BIA held that Singh was not prejudiced by prior counsel's failures, because he was ineligible for adjustment of status on account of his voluntary failure to comply with the BIA's order of voluntary departure. We hold that both conclusions constitute an abuse of discretion. Accord-

ingly, we grant the petition for review and remand to the BIA for further proceedings consistent with this opinion.

## I.

Singh, thirty-five, is a citizen and native of India, and his primary language is Hindi.[1] He arrived in the U.S. on a visitor's visa on May 22, 1998. On June 25, 1998 (approximately two weeks after his visa expired), through counsel, Singh filed an affirmative application for asylum and withholding of removal.

On August 13, 2003, after a hearing, the IJ denied Singh's application for asylum and withholding of removal. The IJ also granted Singh a voluntary departure period of sixty days, meaning that if he did not appeal, he would have to depart the United States by October 12th, 2003.[2] Notably, in his oral decision, the IJ told Singh:

> [Y]ou don't have to accept this decision as final. You can appeal. If you appeal, then my decision won't be final . . . , and while your appeal is pending, the Government won't require that you depart

---

[1] The facts are drawn primarily from Singh's affidavit, submitted to the BIA with his motion to reopen. We accept such facts as true unless the BIA finds them to be " 'inherently unbelievable.' " *Ghahremani v. Gonzales*, 498 F.3d 993, 999 (9th Cir. 2007) (quoting *Maroufi v. INS*, 772 F.2d 597, 600 (9th Cir. 1985)). The BIA made no such finding here.

[2] The grant of voluntary departure is puzzling, given that Singh's counsel did not request voluntary departure and was, in fact, statutorily ineligible to receive it. "An immigration judge may grant voluntary departure at the conclusion of the removal proceedings . . . if he or she finds," among other requirements, that the alien "has been physically present in the United States for a period of at least one year preceding the date the Notice to Appear was served." 8 C.F.R. § 1240.26(c)(1)(i). Singh entered the United States on May 22, 1998. He was served with a Notice to Appear on August 5, 1998. Singh had not accrued the requisite period of physical presence— and both the government and the IJ were on notice of this fact, as it was recognized by an IJ in an earlier hearing.

the United States but they will see what happens with the appeal . . . . I did grant you voluntary departure, so you have to post a $500 bond by . . . August 20th, and then you are required to depart the country by October 12th. *However, if you put in your appeal, that date will probably change. Talk to your lawyer about that. She will be able to tell you what happens with your voluntary departure date.*

(emphasis added).

Singh retained Satwant Pandher to appeal the IJ's decision.[3] Singh paid Pandher $1,500 in cash, and Pandher timely filed a notice of appeal with the BIA on September 2, 2003. On May 17, 2004, while his appeal was pending, Singh married a naturalized U.S. citizen. Shortly after his marriage, Singh asked Pandher to file a visa petition and an application for adjustment of status. Singh paid Pandher an additional $1,500 for these services. In September 2004, after two erroneous filings, Pandher filed a Form I-130, petition for an immediate relative visa, on Singh's behalf. Singh regularly contacted Pandher to ensure that his visa petition was being handled appropriately.

On February 1, 2005, the BIA denied Singh's appeal and granted him a thirty-day period of voluntary departure. At the time, the BIA did not mail copies of its decisions to alien petitioners. Only the alien's counsel received notice. *See Matter of Compean*, 24 I. & N. Dec. 710, 739 n.13 (A.G. 2009) (directing the Executive Office for Immigration Review "to begin sending courtesy copies of final Board decisions to the aliens themselves in addition to sending them to the aliens' lawyers"), *vacated by Matter of Compean,* 25 I. & N. Dec. 1 (A.G. 2009). Singh first learned of the Board's decision in early February 2005, when he called Pandher to inquire about

---

[3]Pandher was disbarred in February 2007 for failing to diligently and competently represent his clients.

the status of his visa petition. Pandher then told Singh to come into his office to "sign some papers for an appeal of the Board's decision." Singh did so, and paid Pandher an additional $700 to appeal the Board's decision. Because Singh is unable to read English, he asked Pandher to explain the decision to him. Pandher told Singh "not to worry, and that he received documents like this frequently." Pandher did not tell Singh anything about voluntary departure. On February 22, 2005, Pandher filed a petition for review with the Ninth Circuit. The petition for review did not request a stay of voluntary departure, nor a stay of removal.

Singh's voluntary departure period expired on March 2, 2005, and Singh did not depart. An alien who is permitted to depart voluntarily, but "*voluntarily fails to depart* the United States within the time period specified" is subject to civil fines, and, more importantly, is "ineligible, for a period of ten years" for relief including cancellation of removal and adjustment of status. 8 U.S.C. § 1229c(d) (emphasis added) (incorporating by reference the relief discussed in 8 U.S.C. §§ 1229b (cancellation of removal and adjustment of status), 1255 (adjustment of status)).

On April 22, 2005, Singh and his wife attended a marriage fraud interview with United States Citizenship and Immigration Services. Pandher also attended. The immigration officer determined that Singh's marriage was bona-fide, and approved his application for an I-130 visa. Pandher then informed Singh that he would "send some paperwork regarding [the] asylum case," but instructed that Singh "not call him 'unnecessarily.' " Unbeknownst to Singh, on July 15, 2005, Pandher filed with the Ninth Circuit a "motion to remand" the case to the BIA. The motion was utterly worthless. Even setting aside any possible statutory ineligibility for adjustment on account of Singh's failure to depart within the designated period, the motion was filed before the wrong court,[4] and was

---

[4]Any motion to remand filed after the BIA has rendered a final decision will be deemed a motion to reopen. *Guzman v. I.N.S.*, 318 F.3d 911, 913 (9th Cir. 2003). A motion to reopen must be filed with the BIA. 8 C.F.R. § 1003.2.

untimely.[5] Not surprisingly, the Ninth Circuit denied the motion. The Ninth Circuit eventually denied Singh's petition for review of the denial of asylum. *Singh v. Gonzales*, 225 F. App'x. 632 (9th Cir. 2007).

Pandher then filed a "motion to remand" with the BIA in light of Singh's marriage and approved visa petition. Again, the motion was worthless. Pandher failed to include the required filing fee. *See* 8 C.F.R. § 1003.2(g)(2)(i). Moreover, the motion was untimely, and Pandher failed to make any argument that the time period for filing the motion to reopen should have been equitably tolled. *See* 8 U.S.C. § 1229a(c)(7)(C)(i).

Dissatisfied with Pandher's representation, Singh and his wife consulted another attorney who referred Singh to his current counsel. Counsel requested and reviewed Singh's file, and informed Singh that Pandher had rendered ineffective assistance. Singh lodged a complaint against Pandher with the Washington State Bar, and informed him of the grievance. On October 23, 2006, counsel entered a notice of appearance with the BIA and filed a motion to reopen to apply for adjustment of status.

The motion to reopen alleged that Singh was "severely prejudiced by his former counsel's failure to: 1) seek a stay of voluntary departure in order to preserve Mr. Singh's eligibility for adjustment of status, and 2) move to reopen Mr. Singh's proceedings once his I-130 petition was approved." Further, the motion to reopen argued that the time period for filing a motion to reopen should be equitably tolled on account of ineffective assistance of counsel.

---

[5]A motion to reopen must be filed within ninety days of the entry of the final order of removal. 8 U.S.C. § 1229a(c)(7)(C)(i). To have been timely, Singh's motion to reopen should have been filed by May 2, 2005.

II.

**[1]** An alien has the statutory right to file one motion to reopen. 8 U.S.C. § 1229a(c)(7)(A); *Nevarez Nevarez v. Holder*, 572 F.3d 605, 608 (9th Cir. 2009). To be considered timely, a motion to reopen must be filed within ninety days of the entry of the final order of removal, unless equitable tolling applies. *Iturribarria v. I.N.S.*, 321 F.3d 889, 897 (9th Cir. 2003). Ineffective assistance of counsel is one basis for equitable tolling. To qualify for equitable tolling on account of ineffective assistance of counsel, a petitioner must demonstrate (a) that he was prevented from timely filing his motion due to prior counsel's ineffectiveness; (b) that he demonstrated due diligence in discovering counsel's fraud or error; and (c) that he complied with the procedural requirements of *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1997); *Ray v. Gonzales*, 439 F.3d 582, 587 (9th Cir. 2006).

If an alien qualifies for equitable tolling of the time and/or numerical limitations on a motion to reopen, the motion is treated as if it were the one the alien is statutorily entitled to file.[6] *See, e.g., Iturribarria*, 321 F.3d at 899-903; *Rodriguez-Lariz v. I.N.S.*, 282 F.3d 1218, 1226 (9th Cir. 2002). When considering the merits of a motion to reopen premised on ineffective assistance of counsel, the BIA asks whether counsel's performance was deficient, and whether the alien suffered prejudice. *Rodriguez-Lariz*, 282 F.3d at 1226. Though counsel's ineffectiveness factors into the analysis of equitable

---

[6]In addition, the BIA may reopen proceedings on its own authority at any time. 8 C.F.R. § 1003.2. We are without jurisdiction to review the BIA's decision to reopen sua sponte. *Mejia-Hernandez*, 633 F.3d 818, 823 (9th Cir. 2011); *Ekimian v. I.N.S.*, 303 F.3d 1153, 1156-57 (9th Cir. 2002). This case, however, does not involve the Board's power to reopen sua sponte, as Singh argued that the time and numerical limitations on his motion to reopen should have been equitably tolled on account of ineffective assistance of counsel, and the BIA decided that there was no ineffective assistance.

tolling and the merits of a motion to reopen, the issues should be considered separately. *Id.*

We have jurisdiction under 8 U.S.C. § 1252(a)(2)(D) and review the BIA's denial of a motion to reopen for abuse of discretion. *See De Martinez v. Ashcroft*, 374 F.3d 759, 761 (9th Cir. 2004); *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1187 (9th Cir. 2001) (en banc). The BIA abuses its discretion when its decision is "arbitrary, irrational, or contrary to law." *Ontiveros-Lopez v. I.N.S.*, 213 F.3d 1121, 1124 (9th Cir. 2000) (internal quotation marks omitted). Here, the BIA concluded that there was no ineffective assistance of counsel, and denied the petition as untimely and on the merits.[7]

### III.

**[2]** The BIA abused its discretion when it concluded that Pandher performed effectively. " 'Ineffective assistance of counsel in a deportation proceeding is a denial of due process under the Fifth Amendment if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case.' " *Ray*, 439 F.3d at 587 (quoting *Lopez v. I.N.S.*, 775 F.3d 1015, 1017 (9th Cir. 1985)). Pandher prevented Singh from reopening his case to apply for adjustment of status. At any time after Singh's marriage, Pandher could have filed a motion to remand the case to the IJ and then petitioned the IJ for a continuance of removal proceedings pending the adjudication of the visa petition. *See Avagyan v. Holder*, ___ F.3d ___, No. 06-73892, 2011 WL 2586275, at

---

[7]We reject the Government's argument that Singh has waived any challenge to the denial of equitable tolling. Counsel's opening brief seeks review of the determination that counsel performed adequately, and cites multiple cases involving equitable tolling on account of ineffective assistance of counsel. It sufficiently raises the issue of equitable tolling for review. *See* Fed. R. App. P. 28(a)(9)(A); *Rattlesnake Coalition v. E.P.A.*, 509 F. 3d 1095, 1100 (9th Cir. 2007) (holding that appellant who challenged both of the lower court's holdings in the body of the brief has not waived the arguments).

*9 n.3 (9th Cir. July 1, 2011) (explaining the process for reopening a case when an alien in removal proceedings has applied for an immediate relative visa).[8] Furthermore, Pandher could have filed a motion to reopen after the BIA denied Singh's appeal but before the expiration of the period of voluntary departure. It was possible, even likely, that the motion would have been granted. *See In Re Velarde-Pacheco*, 23 I. & N. Dec. 253, 255-57 (BIA 2002). Filing the motion would have automatically tolled the voluntary departure period under then-existing Ninth Circuit law. *See Azarte v. Ashcroft*, 394 F.3d 1278, 1289 (9th Cir. 2005), *abrogated by Dada v. Mukasey*, 554 U.S. 1, 19-21 (2008) (rejecting the position that a motion to reopen automatically tolls the voluntary departure period, but holding that an alien who wishes to file a motion to reopen must be permitted to withdraw his request for voluntary departure).

[3] Even if we excused Pandher's apparent desire to wait until Singh's I-130 visa petition was approved before filing a motion to reopen, it is clear Pandher failed to ensure that his client remained eligible for adjustment of status while the visa application was pending. Pandher should have recognized that failure to comply with a voluntary departure order potentially renders an alien ineligible for adjustment of status, and could have ensured that those penalties did not attach. For example, Pandher could have applied for a stay of voluntary departure pending circuit review of the BIA's denial of Singh's appeal; the stay probably would have been granted. *See El Himri v.*

---

[8]Contrary to the Government's assertion, Singh has adequately exhausted his administrative remedies with respect to the claim that Pandher was ineffective because he failed to file a motion to reopen or a motion to remand to the immigration court while the I-130 was pending. Singh's motion argued that he should be permitted to reopen because his counsel failed to preserve his eligibility to apply for adjustment of status, and the BIA conducted a full review of the record. Even if Singh did not raise a particular form of ineffective assistance, he has sufficiently exhausted the claim. *Ladha v. I.N.S.*, 215 F.3d 889, 903 (9th Cir. 2000), *overruled on other grounds by Abebe v. Mukasey*, 554 F.3d 1203 (9th Cir. 2009).

*Ashcroft*, 344 F.3d 1261, 1262-63 (9th Cir. 2002) (holding that the courts can grant a stay of voluntary departure where there is "a probability of success on the merits and the possibility of irreparable injury") (quoting *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998)), *abrogated by regulation as recognized in Garfias-Rodriguez v. Holder*, ___ F.3d ___, No, 09-72603, 2011 WL 1346960, at *8 (9th Cir. Apr. 11, 2011).[9] Pandher also could have applied for a stay of removal at the time he filed the petition for review with the Ninth Circuit; at the time, the motion for a stay of removal would have been construed as encompassing a motion to stay voluntary departure. *Desta v. Ashcroft*, 365 F.3d 741, 748-49 (9th Cir. 2004). Had Pandher applied for a stay of removal or a stay of voluntary departure pending Ninth Circuit review of Singh's asylum claim, and had the motion been granted, the voluntary departure period would not have started to run until 2007, long after Singh's visa application was approved.

**[4]** The BIA excused counsel's failings because it believed Pandher made a "tactical" decision to file a motion to remand with the Ninth Circuit instead of filing for a stay of voluntary departure (or pursuing any of the other avenues of relief). The motion to remand was worthless: the Ninth Circuit has no authority to grant such a motion. It is nigh impossible to imagine how a competent attorney would make a conscious decision to pursue a course leading to certain failure, when faced with several paths to success. Pandher's repeated mistakes, compounded by his inability to recognize the import of his errors, are the epitome of ineffective assistance. Pandher had *four* opportunities to ensure that his client remained eligible to apply for an adjustment of status — the very form of relief he was paid to help his client obtain — and he failed to

---

[9]Under the current regulations, filing either a petition for review or a motion to reopen automatically terminates voluntary departure. 8 C.F.R. §§ 1240.26(b)(3)(iii), 1240.26(i). The regulations apply to petitioners who were granted voluntary departure on or after January 20, 2009, so do not affect this case. 73 FR 76, 927, 76939 (Dec. 18, 2008).

take advantage of any of them. We do not require counsel's performance to be "brilliant," but we cannot sanction representation that prevents an alien from even filing necessary motions and applications. *Lin v. Ashcroft*, 377 F.3d 1014, 1027 (9th Cir. 2004).

IV.

**[5]** The BIA also denied Singh's motion to reopen because it concluded that he had not been prejudiced by counsel's failures. Counsel's deficiencies are prejudicial if they *could* have affected the outcome of the proceedings. *See Mohammed v. Gonzales*, 400 F.3d 785, 793 (9th Cir. 2005); *Iturribarria*, 321 F.3d at 899-90. "The failure to file a necessary document creates a presumption of prejudice[,]" rebutted only when the alien lacks plausible grounds for relief. *Hernandez-Mendoza v. Gonzales*, 537 F.3d 976, 979 (9th Cir. 2007). We must "consider the underlying merits of the case to come to a tentative conclusion as to whether petitioner's claim, if properly presented, would be viable." *Nehad v. Mukasey*, 535 F.3d 962, 971 (9th Cir. 2008) (alteration and citation omitted). Pandher failed to preserve his client's eligibility to apply for adjustment of status and failed to timely file the motion to reopen that was a prerequisite for applying for adjustment of status. These failures create a presumption of prejudice.

**[6]** The BIA concluded that Singh suffered no prejudice because he "voluntarily" failed to depart within the required period and is therefore statutorily ineligible for an adjustment of status. Nevertheless, two months after the BIA decided Singh's case, it held that an alien who is not aware of an order of voluntary departure does not fail to depart "voluntarily" and is not subject to the statutory penalties. *In re Zmijewska*, 24 I. & N. Dec. 87, 94 (BIA 2007). Under *Zmijewska*, Singh has a strong argument that he is not subject to the penalties for failing to comply with a voluntary departure order.

In *Zmijewska*, the BIA construed the phrase "voluntarily fails to depart" as a narrow exception to the penalties for fail-

ure to comply with an order of voluntary departure. 24 I. &
N. Dec. at 93. Zmijewska's Board-accredited representative
failed to notify her of the Board's decision until after the
period granted for voluntary departure had passed. *Id.* at 88.
The BIA first rejected the idea that either it or the courts could
"apply[ ] an open-ended equitable exception to the penalties
for failing to depart within the time for voluntary departure."
*Id.* at 93. Nevertheless, the BIA recognized that "an alien
[who], through no fault of his or her own, is unaware of the
voluntary departure order or is physically unable to depart" is
not subject to the penalties for voluntarily failing to depart. *Id.*
at 94. The BIA emphasized that "the 'voluntariness' excep-
tion is not a substitute for the repealed 'exceptional circum-
stances' exception" but a "much narrower" one. *Id.* In light of
counsel's failure to notify petitioner of the BIA's order of vol-
untary departure, the Board held that respondent did not "vol-
untarily" fail to depart. *Id.*

**[7]** It appears Singh's failure to depart, like that in *Zmi-
jewska*, was not "voluntary," so he remains eligible for an
adjustment of status.[10] In that event, he was clearly prejudiced
by Pandher's failure to file a motion to remand or motion to
reopen after his marriage to a United States citizen. Given that
the BIA did not have the opportunity to apply *Zmijewska* to
the facts of Singh's case, we believe that remand is appropri-
ate. *I.N.S. v. Ventura*, 537 U.S. 12, 16-17 (2002) (per curiam).
We note the following facts which may be relevant to *Zmi-
jewska*'s applicability. First, Singh was not statutorily eligible
for voluntary departure, and the IJ and BIA granted voluntary
departure in error. Second, the IJ specifically instructed Singh
to talk to his lawyer about the voluntary departure period in

---

[10]*Granados-Oseguera v. Mukasey*, 546 F.3d 1011, 1015-16 (9th Cir.
2008) does not control. There, petitioner was fully aware of the voluntary
departure order but remained in the United States in reliance on counsel's
erroneous advice. In this case, Singh did not receive a copy of the BIA's
decision and order of voluntary departure, and has alleged that his counsel
did not tell him about the order of voluntary departure in response to his
query about the contents of the BIA's decision.

the event that he filed an appeal. Third, Singh did not receive a personal copy of the Board's denial of his appeal and order of voluntary departure. Fourth, when Singh asked his lawyer to explain the contents of the order, Panhder told Singh "not to worry and that he received documents like this frequently." Fifth, Singh alleged that Pandher did not tell him anything about an order of voluntary departure.

## V.

**[8]** The BIA's denial of Singh's motion to reopen because counsel did not render ineffective assistance was an abuse of discretion. In addition, if Singh's failure to depart was not "voluntary" under *Zmijewska*, he remains eligible for adjustment of status and counsel's failures prejudiced him. Accordingly, we GRANT the petition for review and REMAND to the BIA for further proceedings consistent with this opinion.